LODGED

FILED

10 MAR 10 AM 10: 02

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

1   Joseph M. Preis, Esq. (State Bar No. 212998)
    jpreis@gaplegal.com
2   Kevin Barry McDermott, Esq. (State Bar No. 109182)
    kmcdermott@gaplegal.com
3   Godes & Preis, LLP
    8001 Irvine Center Drive, Suite 1040
4   Irvine, California 92618
    Telephone:  (949) 468-0051
5   Facsimile:  (949) 872-2281
6   Attorneys for Plaintiff
    Jose Luis Nazario, Jr.
7

8              UNITED STATES DISTRICT COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA

10            CV 10 - 01731 JFW (DTBx)

11  JOSE LUIS NAZARIO, Jr., an          Case No.
    Individual,
12                                      COMPLAINT FOR DAMAGES
            Plaintiff,                  FOR VIOLATIONS OF THE
13                                      UNIFORMED SERVICES
        vs.                             EMPLOYMENT AND
14                                      REEMPLOYMENT RIGHTS ACT
    CITY OF RIVERSIDE; and DOES 1-      38 U.S.C. § 4301 et seq.
15  20, 10                              ("USERRA");
16          Defendants.                 (1) DENIAL OF RETENTION IN
                                        EMPLOYMENT IN VIOLATION
17                                      OF USERRA;
18                                      (2) DENIAL OF REEMPLOYMENT
                                        AND/OR EMPLOYMENT IN
19                                      VIOLATION OF USERRA.
20                                      DEMAND FOR JURY TRIAL
21

22                    NATURE OF ACTION

23       By way of this Complaint, Plaintiff Jose Luis Nazario, Jr. ("Nazario"), an

24  honorably discharged, decorated and wounded combat veteran and former Police

25  Officer employed by Defendant City of Riverside ("Defendant Riverside"), who by

26  virtue of his sacrifice and service to his country is a member of the only protected class

27  recognized by law that must be earned, hereby avers as follows:

28

CONFORM

1      1.    The central question in this action is whether a military veteran's alleged

2 conduct in combat and/or his subsequent arrest for that alleged conduct, which did not

3 result in a dishonorable discharge (or any other disqualifying category enumerated in 38

4 U. S.C. § 4304) and which did not result in a subsequent criminal conviction, can be

5 used by that veteran's employer as a basis to terminate his employment and/or to refuse

6 to rehire or hire him. Here, a former Marine has been robbed of the ability to earn a

7 living and to support his family as a result of the unlawful actions of the Defendant.

8      2.    As more fully averred below, Nazario was terminated by Defendant

9 Riverside from his job as a Police Officer on August 7, 2007, the day that he was

10 arrested for the alleged killing of two unidentified males in Fallujah, Iraq, during

11 intense urban combat operations while serving in the United States Marine Corps some

12 three years earlier. Notwithstanding his unlawful termination, at the time of his arrest

13 and thereafter, Defendant Riverside continually assured, reassured and promised

14 Nazario that it would immediately rehire him if he was acquitted. Following a week

15 long jury trial in this Court, Nazario was acquitted of all charges on August 28, 2008.

16 That same day, consistent with the representations made by Defendant, Nazario asked

17 Defendant Riverside for his job back. Defendant Riverside did not honor its' promise

18 to immediately rehire Nazario, nor did it flatly deny his request. Instead, after forcing

19 him to formally "reapply" and after deceptively leading him to believe, for more than a

20 year, that it fully intended to rehire him, Defendant Riverside informed Nazario on

21 December 1, 2009 that he was "no longer being considered for the position of Police

22 Officer with the City of Riverside Police Department."

23      3.    Nazario brings the instant action invoking the protections of USERRA,

24 which Congress enacted in 1994 in order to "strengthen the existing veterans'

25 employment and reemployment rights provisions." H.R. Rep. No. 103-65, at 18

26 (1993). Congress identified the prohibition of discrimination against persons because

27 of their service in the uniformed services as one of three main purposes of USERRA.

28 38 U.S.C. §4301(a). Courts have long recognized that "[b]ecause USERRA was

1  enacted to protect the rights of veterans and members of the uniformed services, it must

2  be broadly construed in favor of its military beneficiaries."

3      4.      Among other protections, USERRA specifically prohibits discrimination

4  against persons who have performed service in a uniformed service, and provides that

5  they shall not be denied initial employment, reemployment, retention in employment,

6  promotion, or any benefit of employment by an employer on the basis of their service.

7  An employer shall be considered to have engaged in actions prohibited if, *inter alia*, the

8  person's past service in the uniformed services is a motivating factor in the employer's

9  action.  38 U.S.C. §4311(a)(c).

10      5.      The only occurrences which terminate a person's entitlement to the

11  provisions of USERRA, <u>none of which are present here</u>, are "(1) A separation of such

12  person from such uniformed service with a dishonorable or bad conduct discharge.  (2)

13  A separation of such person from such uniformed service under other than honorable

14  conditions, as characterized pursuant to regulations prescribed by the Secretary

15  concerned.  (3) A dismissal of such person permitted under section 1161(a) of title 10

16  [10 USCS § 1161(a)].  (4) A dropping of such person from the rolls pursuant to section

17  1161(b) of title 10 [10 USCS § 1161(b)]."  38 U.S.C. §4304.

18  **JURISDICTION**

19      6.      Both Counts in this Complaint arise under USERRA.  Jurisdiction is

20  therefore founded on Federal Question Jurisdiction, 28 U.S.C. §1331, as conferred by

21  38 U.S.C. §4323(b)(3).

22  **VENUE**

23      7.      Venue is proper in this Court because Defendant Riverside is a political

24  subdivision of a State pursuant to 38 U.S.C. §4323(i) and maintains a place of business

25  in this District, as provided in 38 U.S.C. §4323(c)(2).

26

27

28

1

## PARTIES AND STANDING

2       8.      Nazario continuously served on active duty in the United States Marine

3   Corps from September 10, 1997 to October 11, 2005 and as such, is a person who

4   performed service in a uniformed service of the United States. 38 U.S.C. §4311(a)(c);

5   38 U.S.C. §4303(13)(16). He was <u>honorably</u> discharged from the United States Marine

6   Corps on October 11, 2005, and is therefore entitled to the protections afforded under

7   USERRA. 38 U.S.C. § 4304. By way of this Complaint, Nazario is claiming rights or

8   benefits under USERRA. 38 U.S.C. §4323(a)(3)(A)(B) and 38 U.S.C. §4323(f). At

9   times relevant to this Complaint, Nazario was employed by Defendant Riverside as a

10  Police Officer, and was a resident of Riverside County, State of California.

11      9.      At all times relevant to this Complaint, Defendant Riverside was and is a

12  governmental entity and a political subdivision of, and organized and existing under the

13  laws of, the State of California, pursuant to 38 U.S.C. §4323(i), with its principal and

14  only known place of business in Riverside County, California and is an employer

15  pursuant to 38 U.S.C. §4323(g).

16      10.     DOES 1 through 20, inclusive, are persons, institutions, organizations, or

17  other entities that pay salary or wages for work performed or that have control over

18  employment opportunities or persons to whom Defendant Riverside has delegated the

19  performance of employment-related responsibilities pursuant to 38 U.S.C. §4323(g).

20  DOES 1 through 20 are being sued herein under fictitious names because their true

21  names and capacities are currently unknown. When their true names and capacities are

22  ascertained, Nazario will amend this Complaint to insert the same. Nazario is informed

23  and believes and thereon avers that each of the fictitiously named defendants is

24  responsible in some manner for the occurrences herein averred, and that Nazario's

25  damages were proximately caused by those defendants.

26

27

28

1    11.    Nazario is informed and believes, and on that basis avers, that at all times
2  herein mentioned, Defendant Riverside and Does 1-20, were the agents, servants and
3  employees of each other, acting within the course and scope of said agency and
4  employment.

5    **NO CONDITIONS PRECEDENT, NO LEGAL OR CONTRACTUAL**
6    **REDUCTIONS, LIMITATIONS OR ELIMINATION OF RIGHTS,**
7    **NO STATUTE OF LIMITATIONS**

8    12.    All of Nazario's claims for relief herein arise exclusively under Federal
9  Law and are therefore exempted from California's Government Claims Act pursuant to
10 the Supremacy Clause of the United States Constitution (Art. VI, cl. 2).  In addition,
11 claims arising under USERRA are not subject to any mandatory claims-filing
12 procedures.  38 U.S.C. §4323(a)(3)(A)(B).  USERRA supersedes all State and local
13 laws and ordinances, contacts, agreements, including collective bargaining contracts
14 and agreements, policies, plans, practices, or other matters that reduce, limit, or
15 eliminate in any manner any right or benefit provided, including the establishment of
16 additional prerequisites to the exercise of any such right or the receipt of any such
17 benefit. 38 U.S.C. §4302(b).  No State statute of limitations applies to any proceedings
18 brought pursuant to USERRA.  38 U.S.C. §4323(c)(6).

19    **FACTUAL ALLEGATIONS**
20    **Nazario's Honorable and Decorated Marine Corps Service**

21    13.    Nazario enlisted into the United States Marine Corps on September 10,
22 1997 and served as an infantryman.  He re-enlisted in 2001.  He participated in four
23 overseas tours, including tours in Kosovo and Iraq.  He was decorated for valor in
24 combat by the United States Secretary of the Navy as follows:

25    For heroic achievement while serving as 3D Squad Leader, 3D Platoon,
26    Kilo Company, 3D Battalion, 1st Marines, Regimental Combat Team 1, 1st
27    Marine Division in support of operation Iraqi Freedom II from 19 June
28    2004 to 20 January 2005.  During high intensity urban combat operations

4

1   in the City of Fallujah, Sergeant Nazario performed courageously while
2   leading his squad through multiple engagements against a cunning and
3   determined enemy.  He personally led his squad on numerous assaults
4   against enemy fighting positions, often while under heavy enemy fire.
5   Exhibiting the situational awareness and presence of mind of a seasoned
6   combat leader, Sergeant Nazario's bravery was most evident when, on 13
7   November, he coordinated a rescue effort to evacuate one of his wounded
8   Marines trapped inside an enemy strongpoint.  With complete disregard
9   for his own safety, Sergeant Nazario charged through hostile enemy
10  machine gun fire and directed the extraction of an urgently wounded
11  casualty, potentially saving his life.   Sergeant Nazario's initiative,
12  perseverance, and total dedication to duty reflected credit upon him and
13  were keeping with the highest traditions of the Marine Corps and the
14  United States Naval Service.
15      On November 16, 2004, Nazario was wounded in action in Fallujah, Iraq.  He
16  was honorably discharged from the United States Marine Corps on October 11, 2005.
17                  **Employment as Riverside Police Officer**
18      14.    Nazario applied for a position with Defendant Riverside as a police officer.
19  He was hired and started training at the Police Academy on or about November 16,
20  2005.    During the course of Nazario's employment with Defendant Riverside, he
21  performed each and every condition and covenant required on his part to be performed
22  pursuant to said employment and was continuously employed by Defendant Riverside
23  from November 16, 2005 until his termination on August 7, 2007.  Nazario excelled as
24  a police officer and after approximately six months of training with a field training
25  officer, he was found to be technically proficient and competent enough to patrol on his
26  own. Nazario had no record of discipline or citizen complaints and received favorable
27  evaluations.
28

5

**NCIS Investigation**

15.    Nazario is informed and believes, and on that basis avers, that agents from the Naval Criminal Investigative Service ("NCIS") contacted Defendant Riverside about Nazario's alleged involvement in a combat-related incident in Fallujah, Iraq, in advance of his arrest, which is described below.  Defendant Riverside did not inform Nazario of NCIS's contact.

16.    Nazario was also contacted by an NCIS agent, Mark Fox ("Agent Fox"), in or about July 2007, who requested a meeting with Nazario to take place in Murrieta, California.  Nazario responded that he was very busy with work.  Nazario did not know, and Agent Fox did not tell him, why NCIS was interested in speaking with him until several weeks later when Agent Fox left a voicemail on Nazario's cell phone that it "was about Fallujah."  Even then, Nazario did not understand Agent Fox's statement to mean that he was suspected of any wrongdoing with respect to anything that had occurred in Fallujah almost three years earlier.  Before Nazario was able to return the call, he was arrested.

**Nazario's Arrest**

17.    On the morning of August 7, 2007, Nazario was almost finished with a 10:00 p.m. – 8:00 a.m. shift when he received a call on his cell phone at approximately 6:00 a.m. from his immediate supervisor, Sgt. Bill McCoy ("Sgt. McCoy").  Sgt. McCoy ordered Nazario to the Magnolia Avenue Police Station to sign an evaluation report.  Nazario explained that he had just recently signed his evaluation report and that he was not due for another evaluation for approximately five (5) months.  In response, Sgt. McCoy directed Nazario to "just get here".

18.    Nazario is informed and believes, and on that basis avers, that the foregoing phone call from Sgt. McCoy was designed as a pretext to facilitate Nazario's arrest because NCIS had convinced Defendant Riverside that Nazario was too dangerous to allow him to retain a lawyer and/or turn himself in.  In other words, despite the fact that Defendant Riverside did not consider Nazario to be enough of a

1   risk to the public to immediately suspend him when first contacted by the NCIS --

2   *regarding a combat-related event that had allegedly occurred three years earlier in*

3   *Iraq*-- Defendant Riverside nonetheless conspired to turn its back on and embarrass one

4   of its own officers at the bequest of NCIS, and waited in ambush for Nazario to arrive.

5          19.   Nazario arrived at the Magnolia Avenue Police Station, as ordered, at

6   approximately 6:15 a.m., and, without having any reason to suspect what was about to

7   happen, proceeded to Sgt. McCoy's cubicle. As Nazario approached Sgt. McCoy, who

8   was seated at his cubicle, Sgt. McCoy asked him to lean forward, read and sign the

9   evaluation.  As Nazario started to do so, he was ambushed, grabbed and forcibly

10  restrained by multiple officers, handcuffed, stripped of his police service weapon,

11  placed under arrest and read his *Miranda* rights, all without the courtesy of an

12  explanation. Horrified, shocked and confused, Nazario immediately exclaimed that he

13  was not resisting and had no intention of doing so.  When permitted to raise his head,

14  Nazario observed at least eight (8) other armed officers in the room whom he did not

15  see when he walked in.  Although subsequently requested by Nazario as recently as

16  December of 2009, Defendant Riverside has been unable or unwilling to produce an

17  arrest report, in violation of its own policies and procedures.

18         20.   Shortly after his arrest, the senior officer present, Capt. Michael Blakely

19  ("Capt. Blakely") informed Nazario that there were agents from NCIS in the next room

20  and that he was fired from the City of Riverside Police Force, effective immediately.

21  Nazario repeatedly pleaded with Capt. Blakely to explain why he had just been arrested

22  and terminated.  Capt. Blakely was unable or unwilling to explain and simply directed

23  Nazario to "ask NCIS."  Capt. Blakely ordered Nazario to sign termination papers,

24  which he did while still handcuffed, and repeatedly assured Nazario that he would be

25  rehired as soon as he was acquitted.

26         21.   Nazario was escorted to the next room where several NCIS Agents were

27  waiting for him, including Agent Fox, who immediately remarked, "see, you should

28  have talked to me." Nazario waited with the NCIS Agents while Defendant Riverside's

1  personnel broke into his locker and brought him civilian clothing.  Nazario was stripped

2  of his police uniform, dressed in civilian clothing and then "perp walked" out of the

3  police station by NCIS in front of numerous other officers who were returning to the

4  station at shift change.  NCIS Agents took Nazario to the U.S. Marshalls' office, where

5  he was photographed and fingerprinted.  After he signed a notice to appear, Nazario

6  was driven back to the Magnolia Station where he picked up his car and drove home.

7       22.    Nazario is informed and believes, and on that basis avers, that police

8  officers employed by Defendant Riverside are on a probationary status for a period of

9  eighteen (18) months from their date of hire.  At the time of his arrest on August 7,

10  2007, Nazario was only approximately eight (8) weeks shy of being off of probationary

11  status.  Nazario is further informed and believes, and on that basis avers, that had he

12  been arrested after his probationary status had ended, Defendant Riverside's policies

13  and procedures would have entitled him to a paid administrative leave status pending

14  adjudication of the criminal charges against him.

15       23.    Nazario is informed and believes, and on that basis avers, that Defendant

16  Riverside and Does 1 – 10 either knew, showed reckless disregard for or simply did not

17  act reasonably and in good faith in attempting to determine whether the decision to

18  deny him retention in employment violated his rights under USERRA.  Defendant

19  Riverside caused certain notices, including notices concerning employees' rights under

20  USERRA, to be posted in its place of business, as required by law.   Defendant

21  Riverside and Does 1 – 10 nonetheless chose to willfully disregard USERRA in

22  carrying out the decision to deny Nazario retention in employment.

23            **First of its Kind Federal Prosecution Under MEJA**

24                    **and Subsequent Acquittal**

25       24.    Nazario was ultimately charged with (1) voluntary manslaughter, (2)

26  assault with a dangerous weapon and (3) discharging a firearm in furtherance of a crime

27  of violence.  The Complaint alleged jurisdiction under the Military Extraterritorial

28  Jurisdiction Act ("MEJA") 18 U.S.C. §§3238, 3261(a)(2).  Fashioned *U.S.A. v. Jose L.*

1   *Nazario, Jr.*, U.S.D.C. Central District of California, Case No. ED CR 07-127 SGL, the

2   prosecution represented the first of its kind by the Federal Government against a former

3   service member in a Federal civilian court (vice military courts-martial) for alleged

4   conduct that occurred while that service member was engaged in actual combat

5   operations overseas.    According to MEJA's author, Sen. Jeff Sessions, the

6   circumstances involved in Nazario's prosecution was not the motivation behind MEJA.

7   "I don't think any of us who passed that legislation thought we were now going to have

8   people discharged from the military being charged in federal court." - Sen. Jeff

9   Sessions as quoted by the Associated Press.

10           25.    The charges all stemmed from allegations that on November 9, 2004, in

11   Fallujah, Iraq, during the most intense close quarter house to house combat that the

12   Marine Corps had been involved with since the battle of Hue City, Republic of

13   Vietnam, 40 years earlier, Nazario, "in the heat of passion caused by adequate

14   provocation, unlawfully and intentionally killed two unarmed male human beings

15   without malice." In plain English, Nazario, a Marine Infantryman at the time, was

16   accused of killing insurgents in the insurgent stronghold of Fallujah during the battle of

17   Fallujah.    Nazario denied charges against him and maintained his innocence

18   throughout.    Following a week long jury trial, on August 28, 2008, Nazario was

19   unanimously acquitted by a Federal Jury of all charges.

20                   **Defendant Riverside's Refusal to Re-Hire Nazario**

21           26.    Within an hour of being acquitted, Nazario walked from the Federal

22   Courthouse to Defendant Riverside's Orange Street station and met with Capt. Blakely

23   to start the process of getting his job back. Capt. Blakely extended congratulations to

24   Nazario and told him that he would be back on the job in no time.

25           27.    Nazario was contacted by Officer Lisa Johnson ("Officer Johnson") and

26   instructed to complete pre-employment paperwork, which he did. Unfortunately,

27   Defendant Riverside deceptively led Nazario to believe that it fully intended to rehire

28   him for well over a year with continued assurances and promises of reemployment.

9

1  Ultimately, on December 1, 2009, Nazario was informed in writing by the same Capt.

2  Blakely who had promised him his job back that he was "no longer being considered

3  for the position of Police Officer with the City of Riverside Police Department,"

4  without any further explanation.

5      28.    Nazario is informed and believes, and on that basis avers, that Defendant

6  Riverside and Does 11 – 20 either knew, showed reckless disregard for or simply did

7  not act reasonably and in good faith in attempting to determine whether Defendant

8  Riverside's refusal to rehire and/or hire Nazario violated his rights under USERRA.

9  Defendant Riverside caused certain notices, including notices concerning employees'

10  rights under USERRA, to be posted in its place of business, as required by law.

11  Defendant Riverside and Does 11-20 nonetheless chose to willfully disregard USERRA

12  in carrying out the decision not to rehire and/or hire Nazario.

13                    **FIRST CLAIM FOR RELIEF**

14    **DENIAL OF RETENTION IN EMPLOYMENT IN VIOLATION OF**

15        **38 U.S.C. § 4301 et seq., Against Defendant and Does 1-10.**

16      29.    Nazario incorporates averments set forth in paragraphs 1 – 28, above, as

17  if set forth in full herein.

18      30.    USERRA specifically provides that persons who have performed service

19  as a member of a uniformed service shall not be denied retention in employment on the

20  basis of that performance of service.   38 U.S.C. §4311(a).

21      31.    Nazario is informed and believes, and on that basis avers, that his

22  performance of service with the United States Marine Corps, specifically his service

23  during the Battle of Fallujah in November of 2004, and the alleged conduct therein for

24  which he was arrested and subsequently acquitted, was at least a motivating or

25  substantial factor in the decision by Defendant Riverside and Does 1 – 10 to deny him

26  retention in employment on August 7, 2007, in violation of 38 U.S.C. § 4311(c).

27  Specifically, Nazario avers that, but for his honorable and decorated performance of

28  service in the United States Marine Corps, which did not result in a dishonorable

1   discharge (or any other disqualifying category enumerated in 38 U. S.C. § 4304) or a
2   subsequent criminal conviction, he would have never been denied retention in
3   employment by Defendant Riverside.

4         32.    As a direct and proximate result of the conduct of Defendant Riverside and
5   Does 1- 10, Nazario, a combat veteran who had made a successful transition to civilian
6   life working as a police officer, paying taxes, and supporting his family, has been
7   financially devastated, humiliated and completely betrayed by Defendant Riverside and
8   Does 1 – 10. Nazario has since lost his home and has been forced to move back to his
9   home state of New York. Despite his reasonable and diligent efforts, Nazario has been
10  unable to secure comparable work.

11        33.    As a further direct and proximate result of the conduct of Defendant
12  Riverside and Does 1- 10, Nazario has suffered injuries and damages including but not
13  limited to, loss of past and future earnings, loss of past and future benefits, all to his
14  damage in an amount according to proof at trial.

15        34.    Nazario is informed and believes, and on that basis avers, that Defendant
16  Riverside's denial of retention in employment in violation of USERRA was willful in
17  that Defendant Riverside and Does 1 - 10 either knew or showed reckless disregard for
18  whether their conduct was prohibited by USERRA and that they did not act reasonably
19  and in good faith in attempting to determine whether their denial of retention of
20  employment violated USERRA. To that end, Nazario requests liquidated damages
21  pursuant to 38 U.S.C. § 4323(d)(1)(C).

22        35.    Pursuant to 38 U.S.C. § 4323(h), Nazario further requests an award of
23  reasonable attorneys' fees, expert witness fees and all other allowable litigation
24  expenses.

25
26
27
28

## SECOND CLAIM FOR RELIEF

### DENIAL OF EMPLOYMENT AND/OR REEMPLOYMENT

### IN VIOLATION OF 38 U.S.C. § 4301 et seq.,

#### Against Defendant and Does 11-20.

36.    Nazario incorporates averments set forth in paragraphs 1-35 above as if set forth in full herein.

37.    USERRA specifically provides that persons who have performed service as a member of a uniformed service shall not be denied employment or reemployment on the basis of that performance of service.  38 U.S.C. §4311(a).

38.    Nazario is informed and believes, and on that basis avers, that his performance of service with the United States Marine Corps, specifically his service during the Battle of Fallujah in November of 2004 and alleged conduct therein for which he was arrested and subsequently acquitted, was at least a motivating or substantial factor in the decision to deny him employment or reemployment in violation of 38 U.S.C. § 4311(c).  Specifically, Nazario avers that, but for his honorable and decorated performance of service in the United States Marine Corps, which did not result in a dishonorable discharge (or any other disqualifying category enumerated in 38 U. S.C. § 4304) or a subsequent criminal conviction, he would have never been denied employment or reemployment by Defendant Riverside.

39.    As a direct and proximate result of the conduct of Defendant Riverside and Does 11- 20, Nazario, a combat veteran who had made a successful transition to civilian life working as a police officer, paying taxes, and supporting his family, has been financially devastated, humiliated and completely betrayed by Defendant Riverside.  Nazario has since lost his home and has been forced to move back to his home state of New York.  Despite his reasonable and diligent efforts, Nazario has been unable to secure comparable work.

40.    As a further direct and proximate result of the conduct of Defendant Riverside and Does 11- 20, Nazario has suffered injuries and damages including, but

1  not limited to, loss of past and future earnings, loss of past and future benefits, all to his
2  damage in an amount according to proof at trial.
3      41.   Nazario is informed and believes, and on that basis avers, that Defendant
4  Riverside's denial of employment or reemployment in violation of USERRA was
5  willful in that Defendant Riverside and Does 11 - 20 either knew or showed reckless
6  disregard for whether their conduct was prohibited by USERRA and that they did not
7  act reasonably and in good faith in attempting to determine whether their denial of
8  employment or reemployment violated USERRA.   To that end, Nazario requests
9  liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).
10     42.   Pursuant to 38 U.S.C. § 4323(h), Nazario further requests an award of
11 reasonable attorneys' fees, expert witness fees and all other allowable litigation
12 expenses.

13                              **PRAYER**
14     Wherefore, Nazario prays for judgment as follows:
15              **AS TO THE FIRST CLAIM FOR RELIEF**
16     1.   For special damages including lost past wages, employee benefits,
17 vacation benefits and bonuses in an amount according to proof, but not less than
18 $335,000.00; and
19     2.   For special damages including lost future wages, employee benefits,
20 vacation benefits and bonuses in an amount according to proof, but not less than
21 $1,870,000.00; and
22     3.   For liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C), in an
23 amount according to proof, but not less than an additional $2,205,000.00;
24     4.   For reasonable attorney fees, expert witness fees, and other litigation
25 expenses pursuant to 38 U.S.C. §4323(h);
26
27
28

## AS TO THE SECOND CLAIM FOR RELIEF

5.    For special damages including lost past wages, employee benefits, vacation benefits and bonuses in an amount according to proof, but not less than $335,000.00;

6.    For special damages including lost future wages, employee benefits, vacation benefits and bonuses in an amount according to proof, but not less than $1,870,000.00;

7.    For liquidated damages pursuant to 38 U.S.C. §4323(d)(1)(C), in an amount according to proof, but not less than an additional $2,205,000.00;

8.    For reasonable attorney fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. §4323(h);

## AS TO ALL CLAIMS FOR RELIEF

1.    For costs of suit incurred;

2.    For prejudgment interest;

3.    For such other and further relief as this Court may deem just and proper.

DATED: March 9, 2010          GODES & PREIS, LLP

_____

Joseph M. Preis
Kevin B. McDermott
Attorneys for Plaintiff
Jose Luis Nazario, Jr.

1

## DEMAND FOR JURY TRIAL

2      Plaintiff Jose Luis Nazario, Jr. hereby demands a jury trial on all issues in the

3  case to which a jury trial is available.

4

5  DATED: March 8, 2010                    GODES & PREIS, LLP

6

7

8

9                                         Joseph M. Preis
                                          Kevin B. McDermott
10                                        Attorneys for Plaintiff
                                          Jose Luis Nazario, Jr.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28