# EXHIBIT 67

Exhibit 67, Page 323.

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE LUIS NAZARIO, JR., an individual, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. CV 10-01731 VAP (DTBx) |
| CITY OF RIVERSIDE, et al., | ) | |
| Defendants. | ) | |

The videotaped deposition of MARK FOX, called by the Defendant for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before JOANNE H. RICHTER, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, No. 84-2082, at Residence Inn Waukegan, 1440 South White Oak Drive, Waukegan, Illinois, on the 14th day of October, A.D. 2010, at 9:30 a.m.

A. Sorry. Could you repeat that question?

Q. All right. Did you have discussions with Riverside P.D., prior to August 7, 2007, asking them to make the arrest of Jose Nazario?

A. Never.

Q. Was there any discussion at all of Riverside P.D. conducting the arrest itself?

A. No.

Q. Now, relative to the comments on, perhaps, your opinion or your belief as to the conduct over in Iraq, it is my understanding that under your authority and auspices, you directed a team to go back to Iraq to do some forensic testing?

A. Yes.

Q. Would that have occurred sometime in the fall of 2008?

A. For the second visit, yes, sir.

Q. And, again, you were not personally present, but did this task that you assigned, actually, get completed?

A. Yes, an abbreviated visit to the home was conducted, yes.

Q. And the nature of that visit?

ESQUIRE
an Alexander Gallo Company

A. It was a crime scene examination, examining for bullet fragments, serological evidence, again, re-interview of the home occupants.

Q. And, to your understanding, the results of that investigation?

A. Produced no evidence indicating that there had been any murders committed in the house.

Q. And, in fact, to this particular point in time, has there ever been any forensic evidence uncovered in any location in Iraq that would support these allegations?

A. No, there hasn't.

Q. To your knowledge and to this date, has there ever been any individual identified as a purported victim of these events on November 9, 2004?

A. No, there haven't.

MR. PREIS: A little unorthodox, two quick things:

EXAMINATION

BY MR. PREIS:

Q. Throughout this entire deposition, when you say "RPD" or when you hear counsel asking you

MARK FOX October 14, 2010

IN WITNESS WHEREOF, I do hereunto set my hand and affix my seal of office at Chicago, Illinois, this 22nd day of October, 2010.

Notary Public, Cook County, Illinois.
Commission expires November 12, 2013.

C.S.R. Certificate No. 84-2082.

OFFICIAL SEAL
JOANNE H RICHTER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/12/13

ESQUIRE

Toll Free: 800.300.1214
Facsimile: 951.784.9520

Suite 640
3801 University Avenue
Riverside, CA 92501
www.esquiresolutions.com

Exhibit 67 Page 327

EXHIBIT 68
Exhibit 68, Page 328.

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JOSE LUIS NAZARIO, JR., an individual, )
Plaintiff, )
vs. ) No. CV 10-01731 VAP (DTBx)
CITY OF RIVERSIDE, et al., )
Defendants. )

The videotaped deposition of MARK FOX, called by the Defendant for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before JOANNE H. RICHTER, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, No. 84-2082, at Residence Inn Waukegan, 1440 South White Oak Drive, Waukegan, Illinois, on the 14th day of October, A.D. 2010, at 9:30 a.m.

correct?
A. Yes.
Q. Did anyone from RPD ever contact you regarding the status of the Weemer case?
A. No.
Q. Did anybody ever contact you regarding status of the Nelson case?
A. I believe Officer Anderson asked me when -- if the case had been docketed.
Q. Weemer or Nelson?
A. Nelson.
Q. And do you recall when he asked you that?
A. It would have been sometime after December 2008.
Q. Appreciate that response. It was your testimony and is your testimony that NCIS has never been able to uncover any physical evidence against Jose Luis Nazario, is that correct?
A. That's correct.
Q. Did you ever forward that information to Riverside Police Department?
A. Me, personally? No. Those facts are contained in my reports of investigation.

MARK FOX October 14, 2010

IN WITNESS WHEREOF, I do hereunto set my hand and affix my seal of office at Chicago, Illinois, this 22nd day of October, 2010.

Joanne H Richter

Notary Public, Cook County, Illinois.
Commission expires November 12, 2013.

C.S.R. Certificate No. 84-2082.

OFFICIAL SEAL
JOANNE H RICHTER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/12/13

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 951.784.9520

Suite 640
3801 University Avenue
Riverside, CA 92501
www.esquireresolutions.com

Exhibit 68, Page 331

# EXHIBIT 69

Exhibit 69, Page 332

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE LUIS NAZARIO, JR., an individual, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. CV 10-01731 VAP (DTBx) |
| CITY OF RIVERSIDE, et al., | ) | |
| Defendants. | ) | |

The videotaped deposition of MARK FOX, called by the Defendant for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before JOANNE H. RICHTER, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, No. 84-2082, at Residence Inn Waukegan, 1440 South White Oak Drive, Waukegan, Illinois, on the 14th day of October, A.D. 2010, at 9:30 a.m.

MARK FOX October 14, 2010
152

Q. I believe after you finished processing, it was your testimony you took him back to his vehicle?
A. That's correct.
Q. At any point in time, was there a consideration between yourselves or the U.S. Attorneys to ask the magistrate to remand Mr. Nazario?
A. No, sir.
Q. There was no consideration whatsoever that he should be confined until he either provides bail or bond to be released?
A. No. Actually, the hope or the desire was that he would waive his magistrate's hearing, obtain legal counsel, and he and his legal counsel would meet with the two AUSAs in an effort to gain his cooperation to try to work the case up the ladder to identify individuals, either the officers or senior staff FCOs who were involved.
Q. So, at least, at some point in time, the intent of the investigation that you were working on was, actually, directed to people superior to him in the chain of command?
A. That's correct.

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 951.784.9520

Suite 640
3801 University Avenue
Riverside, CA 92501
www.esquiresolutions.com

Exhibit  69, Page 334

MARK FOX October 14, 2010

210

IN WITNESS WHEREOF, I do hereunto set my hand and affix my seal of office at Chicago, Illinois, this 22nd day of October, 2010.

Joanne H Richter

Notary Public, Cook County, Illinois.

Commission expires November 12, 2013.

C.S.R. Certificate No. 84-2082.

OFFICIAL SEAL
JOANNE H RICHTER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/12/13

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 951.784.9520

Suite 640
3801 University Avenue
Riverside, CA 92501
www.esquiresolutions.com

Exhibit 64 Page 335

# EXHIBIT 70

Exhibit 70, Page 336.



CITY OF
RIVERSIDE

Police Department

**CONFIDENTIAL PERSONAL REFERENCE INQUIRY**

**Diette Nazario** **September 4, 2008**

Dear Diette:

**Jose Nazario** is an applicant for employment with the City of Riverside Police Department as a **Police Officer.**

This position requires a person with good moral character who is honest and industrious. All applicants must undergo an extensive and thorough background examination before they can be considered for employment.

Your name has been referred to us as a person who would have knowledge of the applicant's character, qualifications and fitness for the position. The department places a great deal of weight on information furnished by reliable citizens who are interested in the proper selection of personnel.

***The information given by you will be treated as confidential as set forth by the California Evidence Code, Section 1040.***

Please complete the questions on the reverse of this letter and return it to me as soon as possible. It is important that you complete and send this form as soon as possible to expedite the applicant's background examination. For your convenience, we enclose a self addressed, pre-paid envelope. Your cooperation and assistance in this inquiry is greatly appreciated.

Sincerely,

Russ Leach
CHIEF OF POLICE

Lisa Johnson
Background Investigator
(951) 826-5867

Exhibit 70, Page 337

DEFENDANT'S
EXHIBIT
532
10.23.10

532

 

Rec'd 9/18/08
-jg-

**CONFIDENTIAL PERSONAL REFERENCE INQUIRY**

1. How long have you known the applicant? 7yrs

2. What type of association have you had with the applicant? (examples: casual acquaintance, close friend, neighbor, etc.) Spouse

3. What faults, if any, does the applicant have that would conflict with the duties and responsibilities in a law enforcement agency? none

4. To your knowledge has the applicant been involved in any illegal or questionable conduct? no

5. Have you observed the applicant display prejudice based on race, gender, sexual orientation or AIDS/HIV infection? no

6. To what degree does the applicant use alcohol? social drinker
   To what degree does the applicant use illegal drugs? none

7. To your knowledge, has the applicant ever been discharged from any employment? no
   If yes, please list the name and address of the company and the reason for discharge.

8. Describe the applicant's home / family life. great father, great dad great provider

9. Are you aware of any neighborhood problems and/or suspicious activity involving the applicant? no

10. Have you ever seen the applicant in a stressful situation? Explain: no

11. Does the applicant lose their temper easily? Explain: no

12. Is the applicant honest? yes. Reliable? yes Of Good Moral Character? yes
    Additional Comments: great person

13. Please list the names and addresses of other persons who may have some knowledge of the applicant's qualifications:
    1. Kenny + A Story
    2.

Print Name: Diette Nazario Signature: 9/12/08 [signature]

Occupation and/or Title: Bread Bench info tech Date: 9/12/08

Exhibit 70, Page 338

G:\COMMON\Personnel\Background Forms\Reference-Personal Inquiry Questions-PG2.doc
Updated: 07/12/07

(SPACE BELOW FOR FILING STAMP ONLY)

Richard D. Roth, Esq. (State Bar No. 94479)
**ROTH CARNEY KNUDSEN, LLP**
3850 Vine Street, Suite 240
Riverside, California 92507
(951) 682-6500/Telephone
(951) 682-6591/Facsimile
rroth@rothcarney.com

Timothy T. Coates (State Bar No. 110364)
Cynthia E. Tobisman (State Bar No. 197983)
**GREINES, MARTIN, STEIN & RICHLAND LLP**
5900 Wilshire Boulevard, 12th Floor
Los Angeles California 90036-3626
(310) 859-7811/Telephone
(310) 276-5261/Facsimile
tcoates@gmsr.com
ctobisman@gmsr.com

James E. Brown, Esq. (State Bar No. 162579)
Supervising Deputy City Attorney
**CITY OF RIVERSIDE**
3900 Main Street
Riverside, California 92522
(951) 826-5691/Telephone
(951) 826-5540/Facsimile
jbrown@riversideca.gov

Attorneys for Defendants CITY OF RIVERSIDE

ROTH CARNEY KNUDSEN LLP
3850 VINE STREET, SUITE 240
RIVERSIDE, CALIFORNIA 92507

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE LUIS NAZARIO, Jr., an Individual,

Plaintiff,

vs.

CITY OF RIVERSIDE; and DOES 1-10,

Defendants.

CASE NO. CV 10-01731 JFW (DTBx)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS - SET NO. 1**

**Honorable John F. Walter**
**U.S. District Court Judge**

PROPOUNDING PARTY: Plaintiff JOSE LUIS NAZARIO, JR.

RESPONDING PARTY: Defendant CITY OF RIVERSIDE

SET NO.: ONE (1)

Exhibit 70, Page 339.

**REQUEST FOR ADMISSION NO. 54:**

Admit that the document Bates stamped City 0013928, attached as Exhibit 33, is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 54:**

Admit.

**REQUEST FOR ADMISSION NO. 55:**

Admit that the documents Bates stamped City 0013493-City 0013494, attached as Exhibit 34, are genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 55:**

Admit.

**REQUEST FOR ADMISSION NO. 56:**

Admit that the document Bates stamped City 0013485, attached as Exhibit 35, is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 56:**

Admit.

**REQUEST FOR ADMISSION NO. 57:**

Admit that the documents Bates stamped City 0013994-City 0013995, attached as Exhibit 36, are genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 57:**

Admit.

**REQUEST FOR ADMISSION NO. 58:**

Admit that the document Bates stamped City 0013993, attached as Exhibit 37, is genuine.

**RESPONSE TO REQUEST FOR ADMISSION NO. 58:**

Admit.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the document Bates stamped City 0013991, attached as Exhibit 38, is genuine.

Exhibit 70, Page 340.

ROTH CARNEY KNUDSEN LLP
3850 VINE STREET, SUITE 240
RIVERSIDE, CALIFORNIA 92507

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Admit.

DATED: August 23, 2010

ROTH CARNEY KNUDSEN, LLP

By: ______________________
Richard D. Roth
Attorneys for Defendant
CITY OF RIVERSIDE

ROTH CARNEY KNUDSEN LLP
3350 Vine Street, Suite 240
Riverside, California 92507

Exhibit 70, Page 341.

**VERIFICATION**

I, the undersigned, certify and declare that I have read the foregoing RESPONSE TO REQUEST FOR ADMISSIONS, SET ONE contents. The statement following the box checked is applicable.

[ ] I am a party to this action. The matters stated in the document described above are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

[X] I am [X] an officer [ ] a partner [ ] the Risk Manager for the City of Riverside, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in the document described above are true.

[ ] I am the attorney, or one of the attorneys for , a party to this action. Such party is absent from the county where I or such attorneys have their offices and is unable to verify the document described above. For that reason, I am making this verification for and on behalf of that party. I am informed and believe and on that ground allege that the matters stated in said document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on the 3rd day of September, 2010, at Riverside, California.

M. [signature]

ROTH CARNEY KNUDSEN LLP
3850 VINE STREET, SUITE 240
RIVERSIDE, CALIFORNIA 92507

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

------------------------------------------x

JOSE LUIS NAZARIO, JR., an individual,

Plaintiff,

- against - CASE NO. CV 10-01731 VAP (DTBx)

CITY OF RIVERSIDE, et al.,

Defendants.

------------------------------------------x

Saturday,

October 23, 2010

1:15 p.m.

VIDEOTAPED EXAMINATION BEFORE TRIAL OF Witness, DIETTE NAZARIO, held at the offices of Rockland & Orange Reporting, 20 South Main Street, New City, New York, on the above date and time before a Notary Public of the State of New York.

ROCKLAND & ORANGE REPORTING

20 South Main Street

New City, New York 10956

(845) 634-4200

he -- we were -- we were meeting and he was amicable. And he was -- like when he had first -- when I had first saw him again, he was like, you know, come here, girl. I miss you. You look great. And he was kind of like on me, and it seemed like he was trying to rekindle something. I was like, no. No. But then when we were -- when we initially saw each other, he -- he expressed to me that he had missed me and everything, and next thing I know we were having relations. It was very quick.

Q. Okay. Do me a favor, take a look at Defense Exhibit 532, which should be in front of you. I believe it was either the first or second exhibit Mr. Roth gave you this morning.

Okay. I'd ask you to take a look at the second page. Now, you had previously testified today that that is your handwriting contained on the second page --

A. Yes.

Q. -- Exhibit 532; correct?

A. Yes.

Q. All right. With respect to the first question, appears to read: How long have

C E R T I F I C A T I O N

I, Jacqueline Padilla, a Certified Shorthand Reporter and Notary Public within and for the State of New York, hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn by a Notary Public and that the transcript of said examination is a true record of the testimony given by said witness; and

That I am not related to any of the parties to this action by blood or marriage, and I am in no way interested in the outcome of this matter.

Jacqueline Padilla, CSR

Jacqueline Padilla, CSR

# EXHIBIT 71

Exhibit 71, Page 346.

ORIGINAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE LUIS NAZARIO, JR., an individual,

Plaintiff,

vs.

CITY OF RIVERSIDE; and DOES 1-10,

Defendants.

CASE NO. CV 10-01731 VAP (DTBx)

VIDEOTAPED DEPOSITION

OF

JOSE LUIS NAZARIO, JR.

LOCATION: GODES & PREIS LLP
8001 Irvine Center Drive
Suite 1040
Riverside, California

DATE AND TIME: Monday, August 9, 2010
10:01 a.m. - 5:53 p.m.

REPORTED BY: LYNNE DALTON, CSR, RDR
CSR NO. 3544

JOB NO.: 68294LD

GILLESPIE REPORTING SERVICES

GILLESPIE REPORTING AND DOCUMENT MANAGEMENT INC.
3333 Central Ave., Ste. D· Riverside, CA 92606 · 951-682-5686 · Fax 951-682-4990
Email: grdm@charterinternet.com

Q. Is that yes?
A. I believe so.
Q. You have to --
A. It was the day prior. So October -- this was sent on October 7, so yes. This would have been October 6.
Q. So the incident occurred right around midnight, before or after, on October 6, 2008?
A. Sometime the night of October 6.
Q. What happened?
A. Well, my wife and I, we were arguing. Since I lost my job, we've been arguing more and more. And we started heading down the, you know, path of divorce. We were just devastated since, you know, she wasn't working and I was the only one working.

And since we were talking about divorce, she wanted full custody of my son, and I wanted, you know, joint custody, you know, split custody. I still wanted to be in my kid's life. She did not like that. She felt she wanted to have him -- well, she felt she should have him all to herself, and I did not agree with her.

She started making threats, even prior to that day. Because, I mean, this was something that we argued about. We discussed divorce all the time once it got to October, by October. We discussed divorce all the time,

Exhibit 11, Page 548.

and she would always tell me how she wants full custody of the kid. I would always say no.

And she would threaten to call Lisa Johnson and say, "Hey, I know you're" -- well, she would tell me, "Hey, I'm going to call Lisa Johnson and tell her you're physically abusive to me if, you know, you don't let me have my son."

And that's what we would argue about. That's what we argued about the night on October 6.

Q. Well, what happened that night?

A. We were arguing about custody, and police showed up to our house. She -- this is after she told me, "I'm going to call the police and tell them you're beating me up," which I told her, "Go ahead. Call them."

So police come over to the house. And I believe I was laying upstairs in the bedroom. Police observed the house. They see -- doesn't look like there was a fight here. They observed myself and my wife at the time. No bruises, no marks. They -- I mean, so far it's just -- gosh, what do you call it? It's not -- they can't consider it domestic violence. They can't see any violence that had been done.

Q. Prior to the time the police officers arrived at your Rock Hill residence on or about October 6, 2008, had you touched your wife?

Exhibit 71, Page 349

REPORTER'S CERTIFICATE

I, LYNNE DALTON, a certified shorthand reporter, No. 3544, for the State of California do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was sworn by me to testify to the truth, the whole truth, and nothing but the truth;

That the said deposition was taken down by me in stenotype at the time and place therein stated and was thereafter reduced to printing under my direction.

I further certify that I am not of counsel or attorney for either of the parties hereto or in any way interested in the event of this cause, and that I am not related to either of the parties hereto.

In witness whereof, I have hereunto subscribed my name this 16th day of August, 2010.

LYNNE DALTON, CSR No. 3544

Exhibit 71, Page 350

# EXHIBIT 72

Exhibit 72, Page 351.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT COURT OF CALIFORNIA

-------------------------------------------X

JOSE LUIS NAZARIO, JR.,

Plaintiff,

-against-

CITY OF RIVERSIDE, et al,

Defendants.

-------------------------------------------X

Friday

October 22, 2010

2:10 p.m.

DEPOSITION OF a Non-Party Witness, CYRUS BARNES, held at the Sullivan County Sheriff's Office, 4 Bushnell Avenue, Monticello, New York, on the 22nd day of October, 2010, before a Notary Public of the State of New York.

ROCKLAND & ORANGE REPORTING

20 South Main Street

New City, New York 10956

(845) 634-4200

Exhibit 72, Page 352.

Cyrus Barnes

8:00 a.m. on October 7, 2008?

A. Yes.

Q. Were you partnered with anyone at the time?

A. No.

Q. Were you a detective at the time?

A. No.

Q. So you were a Sheriff's deputy at the time?

A. Yes.

Q. Do you recall responding to a domestic violence 911 call at a residence located at 9 Plymouth Lane in Rock Hill, New York?

A. Yes.

Q. On that day, specifically late evening October 6th-early morning October 7th, 2008?

A. Yes, a little after midnight.

Q. So it would be a little after midnight on October 7, 2008?

A. Yes.

Q. Do you recall how you received the call?

A. Yes, it was a 911 call.

Q. Did anyone respond with you?

A. No.

Q. Did Deputy Costa indicate to you that there had been any physical contact between Mr. Nazario and his then wife, Diette Nazario?

A. Not that I can recall.

Q. Now, Detective, in your portion of the incident report which I marked as Exhibit 525, there's a sentence that reads Verbal Altercation escalated into into a minor physical dispute.

A. Right.

Q. At some point did you learn that there was some physical aspect to the dispute?

A. If I recall right, it was just pushing and shoving, it wasn't.

Q. It wasn't anything more than that?

A. It wasn't anything major because otherwise we would have arrested Mr. Nazario.

Q. Now, in your portion of the incident report, Exhibit 525, there's a phrase, No complaint signed, couple also in process of divorce.

Was there any discussion with Diette Nazario as to whether she wanted to file a complaint against her husband?

A. She was asked if, you know -- you know,

October 7th of 2007.

A. Yes.

Q. October 7, 2007?

A. Yes.

Q. Can you describe his demeanor for us?

A. At first he was quite-- didn't want to really say anything, he had a stare.

Q. Sure.

A. And then as I talked to him, it's like he came around.

Q. Was he cooperative with you?

A. Yes.

Q. Respectful?

A. Yes.

Q. Not belligerent in any manner?

A. No.

Q. And I'm referring solely to October 7th as opposed to October 6th, because it appears that everything we're talking about today occurred after midnight pursuant to the report. Is that correct?

A. Yes.

Q. Pursuant to October 7th, 2007, when you arrived at the residence did you have a chance to observe Diette Nazario?

A. Briefly.

Q. Did you notice any visible injuries to Diette Nazario?

A. I didn't, no.

Q. Did Diette Nazario complain of any injuries to you?

A. No.

Q. As far as you know, did she complain of any injuries to Pat Costa?

A. I can't recall, I don't think so, I can't recall.

Q. Did Diette Nazario ever say words to the effect of, Jose Nazario is going to kill me, my husband is going to kill me, anything like that?

A. Not that I recall. She was just afraid.

Q. Now, had she said something like Jose threatened to kill her, is that something that would have wound up in your report?

A. Yes.

Q. Would that have upped the level of suspicion?

A. Yes, more concern.

Q. Yes, okay. Your testimony is that she

between the two that you're aware of?

A. No.

Q. What did Mr. Nazario, other than what you've already testified to, what did Mr. Nazario say to you about his wife's allegations?

A. Well, there were no allegations. The allegations, it was just a domestic argument, dispute between the two -- pushing and shoving. There was no allegations that he did anything. It was like a mutual pushing and shoving thing.

Q. Mutually, I appreciate that. Now, I assume and I may be wrong but as a detective you probably don't respond to domestic violence calls anymore?

A. Not anymore.

Q. When you did respond to domestic violence calls is that something that occurred often?

A. Yes.

Q. With respect to the domestic violence calls did each domestic violence call that you responded to result in a domestic incident report?

A. Yes.

Q. Every single one?

Exhibit 72, Page 357.

correct?

A. Yes.

Q. Is it the standard and practice of this department that officers literally go through every single question and check the appropriate response as given by the alleged victim?

A. Yes.

Q. After October 7th of 2007 do you recall ever going back to the Nazario residence in response to the domestic violence call?

A. No.

Q. We spoke today or you spoke with counsel today about the -- might have been a little bit misclassified but the encouragement to go to a hotel for Mr. Nazario?

A. Right.

Q. Was it your direction to Mr. Nazario that he simply needed to leave that residence as opposed to he needed to leave that residence and go to a hotel?

A. No. What it was, I just wanted to separate.

Q. You just wanted to get out?

A. I can't force the man out of his house

so I suggest.

Q. And he was cooperative?

A. And he was cooperative.

Q. So if he didn't actually to go a hotel and instead went to a parking lot and slept in his car, that didn't violate any laws as far as you're concerned?

A. No, as long as he didn't come back.

Q. And as you're sitting today you have no reason to believe that he did go back; correct?

A. Correct.

Q. You testified that Mr. Nazario mentioned to you that he's been diagnosed by the VA with PTSD; correct?

A. Yes.

Q. Are you sure that Mr. Nazario told you that information?

A. I believe so, yes.

Q. Is it possible?

A. No, because we went upstairs and we were talking and this is where the thing came out about him being a police officer with Riverside and him being a Marine. That's how the conversation came with me being a veteran also. We did have

Cyrus Barnes

A. Honestly, it was a combination of all.

Q. Combination of all?

A. Yes.

Q. And that's standard; correct?

A. Yes.

Q. And clearly if you felt that there was an immediate danger of harm to Mrs. Nazario or the child further action would have been taken against Mr. Nazario; correct?

A. Yes.

Q. And I apologize ahead of time because I'm going to ask you to go back in your memory a bit but I'm going to ask you to focus on the same time period but a month later so August, September, October, November, December of '08. When I ask you the question it will be much easier. Did anyone during that time frame contact you with respect to this incident?

A. Not that I can recall.

Q. No other police agencies?

A. Not that I recall.

Q. Prospective employers?

A. Not that I recall.

Q. And clearly no one from the Riverside

one that interviewed her.

Q. Okay. But you were aware that the parties were going through a divorce at the time?

A. Yes.

Q. And is it common to get called to a domestic violence call when the parties are going through a divorce?

A. Yes.

Q. Can we go off the record?

(Whereupon a discussion took place off the record.)

MR. PREIS: I just have a few follow-up questions, I apologize.

Q. On October 7th, 2007, or thereafter could Mr. Nazario have returned to his home if he wanted to?

A. Yes.

Q. Nothing legally stopping him whatsoever?

A. No.

Q. And with respect to the restraining order that was referred to the family court for a restraining order?

A. Yes.

CERTIFICATION

I, Dorothy Magnelli, a Stenotype Reporter and Notary Public within and for the State of New York, hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn by a Notary Public and that the transcript of said examination is a true record of the testimony given by the said witness; and

That I am not related to any of the parties to this action by blood or marriage, and I am in no way interested in the outcome of this matter.

[signature]

Dorothy Magnelli

# EXHIBIT 73

Exhibit 73, Page 363.

ORIGINAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE LUIS NAZARIO, JR., an individual,

Plaintiff,

vs.

CITY OF RIVERSIDE; and DOES 1-10,

Defendants.

CASE NO. CV 10-01731 VAP (DTBx)

VIDEOTAPED DEPOSITION

OF

JOSE LUIS NAZARIO, JR.

LOCATION: GODES & PREIS LLP
8001 Irvine Center Drive
Suite 1040
Riverside, California

DATE AND TIME: Monday, August 9, 2010
10:01 a.m. - 5:53 p.m.

REPORTED BY: LYNNE DALTON, CSR, RDR
CSR NO. 3544

JOB NO.: 68294LD

GILLESPIE

GILLESPIE REPORTING AND DOCUMENT MANAGEMENT INC.
3333 Central Ave., Ste. D· Riverside, CA 92606 · 951-682-5686 · Fax 951-682-4990
Email: grdm@charterinternet.com REPORTING SERVICES

Exhibit 13, Page 364

THE WITNESS: Yes, please.

MR. ROTH: Madam Court Reporter.

(The record was read as requested.)

MR. PREIS: That's with respect to something you read, not with respect to anything you may have heard from your counsel.

THE WITNESS: I remember reading something about Weimer. I can't remember exactly what was on it.

BY MR. ROTH:

Q. Did you on or about November 9, 2004, while in Fallujah inside a house with four Iraqis present shoot an Iraqi?

MR. PREIS: Objection. Vague and ambiguous as to "Iraqi." Also implicates my client's fifth amendment rights against self-incrimination. Instruct him not to respond.

MR. ROTH: We can go over that later. I haven't researched the issue, but my understanding is he's been tried and acquitted. I don't know what his fifth amendment right at this point would be. Do you, Counsel?

MR. PREIS: I do. And I appreciate that we can go over this later. The problem is he has no idea who he was acquitted of killing. He has no idea who he was accused of killing. That's part of the problem with being accused of killing Does and being acquitted of killing

Exhibit 13, Page 365

REPORTER'S CERTIFICATE

I, LYNNE DALTON, a certified shorthand reporter, No. 3544, for the State of California do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was sworn by me to testify to the truth, the whole truth, and nothing but the truth;

That the said deposition was taken down by me in stenotype at the time and place therein stated and was thereafter reduced to printing under my direction.

I further certify that I am not of counsel or attorney for either of the parties hereto or in any way interested in the event of this cause, and that I am not related to either of the parties hereto.

In witness whereof, I have hereunto subscribed my name this 16th day of August, 2010.

LYNNE DALTON, CSR No. 3544

Exhibit 73, Page 366

# EXHIBIT 74

Exhibit 74, Page 367.

(SPACE BELOW FOR FILING STAMP ONLY)

Richard D. Roth, Esq. (State Bar No. 94479)
**ROTH CARNEY KNUDSEN, LLP**
3850 Vine Street, Suite 240
Riverside, California 92507
(951) 682-6500/Telephone
(951) 682-6591/Facsimile
rroth@rothcarney.com

Timothy T. Coates (State Bar No. 110364)
Cynthia E. Tobisman (State Bar No. 197983)
**GREINES, MARTIN, STEIN & RICHLAND LLP**
5900 Wilshire Boulevard, 12th Floor
Los Angeles California 90036-3626
(310) 859-7811/Telephone
(310) 276-5261/Facsimile
tcoates@gmsr.com
ctobisman@gmsr.com

James E. Brown, Esq. (State Bar No. 162579)
Supervising Deputy City Attorney
**CITY OF RIVERSIDE**
3900 Main Street
Riverside, California 92522
(951) 826-5691/Telephone
(951) 826-5540/Facsimile
jbrown@riversideca.gov

Attorneys for Defendants CITY OF RIVERSIDE

ROTH CARNEY KNUDSEN LLP
3850 VINE STREET, SUITE 240
RIVERSIDE, CALIFORNIA 92507

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE LUIS NAZARIO, Jr., an Individual,

Plaintiff,

vs.

CITY OF RIVERSIDE; and DOES 1-10,

Defendants.

CASE NO. CV 10-01731 JFW (DTBx)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS - SET NO. 1**

**Honorable John F. Walter**
**U.S. District Court Judge**

PROPOUNDING PARTY: Plaintiff JOSE LUIS NAZARIO, JR.

RESPONDING PARTY: Defendant CITY OF RIVERSIDE

SET NO.: ONE (1)

Exhibit 74, Page 368.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Deny.

**REQUEST FOR ADMISSION NO. 16:**

Admit that at or near the time of his arrest on August 7, 2007, DEFENDANT represented to PLAINTIFF that he would be re-employed by DEFENDANT if he was acquitted of the alleged misconduct during his military service with the United States Marine Corps in Iraq for which he was arrested.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Deny.

**REQUEST FOR ADMISSION NO. 17:**

Admit that after PLAINTIFF was found not guilty of the alleged misconduct during his military service with the United States Marine Corps in Iraq, DEFENDANT conducted an independent investigation to determine whether or not PLAINTIFF had committed the alleged misconduct that he was acquitted of.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Deny. Defendant admits that it conducted a background investigation in accordance with its customary practice, and as required by P.O.S.T., associated with Plaintiff's potential re-employment with Riverside Police Department.

**REQUEST FOR ADMISSION NO. 18:**

Admit that after PLAINTIFF was found not guilty, DEFENDANT ultimately concluded that he had engaged in the alleged misconduct during his military service with the United States Marine Corps in Iraq for which he had been acquitted.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Deny.

**REQUEST FOR ADMISSION NO. 19:**

Admit that in the absence of PLAINTIFF'S service with the United States Marine Corps in Iraq, he would not have been arrested on August 7, 2007 for

ROTH CARNEY KNUDSEN LLP
3850 Vine Street, Suite 240
Riverside, California 92507

alleged misconduct during his military service with the United States Marine Corps in Iraq.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Defendant incorporates the General Objections as though fully set forth herein. Defendant further objects to this request on the grounds that it calls for speculation in that the Request assumes facts which are not in the record; and, that the Request lacks foundation.

Notwithstanding the foregoing, and without waiving the above objections, Defendant lacks sufficient information to admit or deny the matter stated in the Request; and, despite reasonable inquiry, the information Defendant knows or can readily obtain is insufficient to enable it to do so.

**REQUEST FOR ADMISSION NO. 20:**

Admit that in the absence of PLAINTIFF'S arrest on August 7, 2007 for alleged misconduct during his military service with the United States Marine Corps in Iraq, DEFENDANT would not have TERMINATED PLAINTIFF'S employment on August 7, 2007.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Admit.

**REQUEST FOR ADMISSION NO. 21:**

Admit that PLAINTIFF would not have been TERMINATED for being arrested for alleged misconduct during his military service with the United States Marine Corps in Iraq if he had completed his probationary period prior to being arrested.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Defendant incorporates the General Objections as though fully set forth herein. Defendant further objects to this request on the grounds that it calls for speculation in that the Request assumes facts which are not in the record; and, that the Request lacks foundation.

Exhibit H, Page 370.

ROTH CARNEY KNUDSEN LLP
3850 Vine Street, Suite 240
Riverside, California 92507

**RESPONSE TO REQUEST FOR ADMISSION NO. 69:**

Admit.

DATED: August 23, 2010

ROTH CARNEY KNUDSEN, LLP

By: [signature]
Richard D. Roth
Attorneys for Defendant
CITY OF RIVERSIDE

ROTH CARNEY KNUDSEN LLP
3850 VINE STREET, SUITE 240
RIVERSIDE, CALIFORNIA 92507

Exhibit 74, Page 371.

**VERIFICATION**

I, the undersigned, certify and declare that I have read the foregoing RESPONSE TO REQUEST FOR ADMISSIONS, SET ONE contents. The statement following the box checked is applicable.

[ ] I am a party to this action. The matters stated in the document described above are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

[X] I am [X] an officer [ ] a partner [ ] the Risk Manager for the City of Riverside, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I am informed and believe and on that ground allege that the matters stated in the document described above are true.

[ ] I am the attorney, or one of the attorneys for , a party to this action. Such party is absent from the county where I or such attorneys have their offices and is unable to verify the document described above. For that reason, I am making this verification for and on behalf of that party. I am informed and believe and on that ground allege that the matters stated in said document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on the 30th day of September, 2010, at Riverside, California.

M. [signature]

ROTH CARNEY KNUDSEN LLP
3550 VINE STREET, SUITE 240
RIVERSIDE, CALIFORNIA 92507